FILED

2026 Mar-10  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CRAIG EVANS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:25-cv-00801-RDP-SGC** |
| | ) | |
| **PHILLIP MITCHELL,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This case is before the court on Petitioner Craig Evans's counseled petition for writ of habeas corpus under 28 U.S.C. § 2254. (Docs. # 1, 2).[1] Evans, an Alabama state prisoner, challenges his 2011 convictions in Tuscaloosa County. Respondent Phillip Mitchell has answered,[2] and this matter is ripe for review. As explained below, the petition is due to be denied and this action dismissed as time-barred, unexhausted, and procedurally defaulted.

## I.    BACKGROUND

In 2009, a grand jury indicted Evans for three counts of attempted murder, four counts of first-degree robbery, and two counts of first-degree burglary. (Doc. # 6-2 at 6-16). The Tuscaloosa County Circuit Court conducted a four-day jury trial in September 2011. (Doc. # 6-1 at 10-11). Evans was convicted at trial. (Doc. # 6-2 at 72-76). The Alabama Court of Criminal Appeals ("ACCA") summarized the pertinent evidence presented at trial:

> Joshua Lee Jefferson met Evans at the Greater Faith in Victory Worship Center where Evans's brother was the pastor. Jefferson had recently been laid off from his job as a construction worker and Jefferson had mentioned his financial difficulties to Evans. While Jefferson and Evans were not close friends, Evans stated that "he knew a guy he had worked for that had some money, we could get some money from him." (R. 329.) On September 16, 2008, Evans and Jefferson met at Evans's

---

[1]  Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. # __ at __).

[2]  Respondent's answer did not include the trial transcript as counsel reasoned it was unnecessary because only procedural defenses were asserted. (Doc. # 6 at 3 n.1). Evans does not dispute the authenticity of the documents attached to the Answer, including the opinion issued by the Alabama Court of Criminal Appeals.

house, then walked to the house owned by Clay and Angela Hudson on Veterans' Memorial Drive in Tuscaloosa.

Evans and Jefferson entered the house from a door in the carport that led into a home gym. Angela Hudson heard the house's alarm system make a beeping noise. Angela woke her husband, Clay, and told him that she thought someone was in their house. Clay went to the home gym area and saw Evans and Jefferson trying to open the interior door to his house. Clay pushed back against them, but Evans overpowered Clay. Jefferson was carrying a .22 rifle which he pointed at Clay while Evans went into the house to see if there was anyone else present. During his testimony, Jefferson identified the .22 rifle that had been entered into evidence as the weapon he used during the crime because of the "black tape on the end" of the gun. (R. 361.) Evans was in the house for a short period of time before he returned to the home gym area with Angela.

Upon seeing Angela in Evans's custody, Clay started fighting with Evans and Jefferson in an attempt to free his wife. Clay wrestled over the gun with Jefferson and the gun discharged two or three times, hitting Clay in the knee and the foot. Clay testified that the gunshot wounds required three surgeries, a bone graft, the replacement of his meniscus tendon, and that it took eight months before he was able to walk normally again. At the time of trial, Clay still had lingering effects from the shooting and some fragments of the bullets remained in his foot and knee.

Despite his multiple gunshot wounds, Clay was able to wrest the gun from Jefferson. Jefferson and Evans subsequently ran away from the house; however, Clay followed them and started shooting toward Evans and Jefferson. As they ran, Evans and Jefferson threw their gloves and masks into a wooded area across the street. At some point during their flight, Jefferson realized that he had been shot in the leg. Evans and Jefferson stopped running when they came to a gas station in Alberta City. From there, Evans telephoned his girlfriend, Robyn Jones, who picked up Evans and Jefferson from the gas station and drove them to Jefferson's house.

Evans, Jefferson, and Jones arrived at Jefferson's house where they were met by Jefferson's wife, Latoya Holliness. Holliness testified she was awakened by someone banging on her door on the night of September 16, 2008. She answered the door and recognized Evans and Jones—who she knew from church—standing there with her husband, who had been shot. Holliness wanted to know who was going to take Jefferson to the hospital. Jefferson was convinced by Evans and Jones that it was not a good idea to go to the hospital, so Holliness administered medical treatment to her husband. During his testimony, Jefferson explained that he was going to plead guilty for his role in the home invasion, and that he had not been promised anything in exchange for his testimony.

Vincent Romero, Evans's former employer, testified at trial. Romero had employed Evans with his heating, cooling, and home construction business for a short period of time in 2007, and Romero, Evans and another employee went to the Hudsons's house to do some wiring work. Romero testified that Evans was in every room of the Hudsons's house during that time. Romero testified that upon seeing the

Hudsons's house it was obvious that they were wealthy.

Robyn Jones, who had two children with Evans and lived with him at the time of the home invasion, testified during the trial. Jones testified that Evans had a rifle or a shotgun with black tape on the stock with him on the night of the home invasion. Jones stated that Evans left their house with one of his friends, and while Jones could not recall the name of Evans's friend, she knew the friend's wife's name was Latoya.

Jones did not see Evans again until later that evening when Evans telephoned her and asked her to pick up he and Jefferson from a gas station. When Jones arrived at the gas station she could see that Jefferson had been shot.

Deborah Dodd of the Alabama Department of Forensic Sciences conducted DNA testing on the evidence found at the crime scene. During her analysis, she compared DNA from a mask worn by one of the perpetrators of the home invasion with a sample of Evans's DNA. Evans's DNA matched the DNA found on the mask, and the statistical analysis indicated that the match would occur in "approximately 1 of 9.3 quadrillion random unrelated African-American individuals." (R. 262.) Dodd clarified her statistical analysis, stating, "I can tell you with a high degree of confidence that the DNA from the mask came from Craig Evans or his identical twin." (R. 262.) Dodd further testified that Evans's DNA was the only DNA she was able to recover from the mask.

Evans testified in his own defense and offered a conflicting version of the events surrounding the home invasion. Evans testified that he and Jefferson were actually close friends, and that they often visited at each other's houses. Evans stated that he and Jefferson had an argument when Evans went to Jones's house and saw Jones and Holliness lying in bed together smoking marijuana "embraced as if they had a relationship." (R. 93). Evans testified that after this incident, he and Jefferson had no further "friendly conversations." (R. 94.) Evans denied having ever been to the Hudsons's house; Evans also denied committing any burglary with Jefferson.

(Doc. # 6-5 at 2-4).

As noted above, on September 15, 2011, the jury found Evans guilty of one count of attempted murder, two counts of first-degree robbery, and two counts of first-degree burglary. (Doc. # 6-2 at 72-76). That same day, the trial court set aside one of the burglary convictions. (*Id.* at 71). Finding Evans was a habitual offender, the trial court imposed consecutive sentences of life without parole on the four remaining convictions. (*Id.* at 4).

Evans appealed, challenging the sufficiency of the evidence that he participated in the crimes. (Doc. # 6-3). The ACCA affirmed and subsequently overruled Evans's application for

rehearing. (Docs. # 6-5, 6-6 at 10-25, 6-1 at 13). Evans filed a petition for a writ of certiorari in the Alabama Supreme Court, which was denied on October 12, 2012. (Docs. # 6-7, 6-8 at 1).

More than four years later, on January 30, 2017, Evans filed a counseled petition for postconviction relief under Rule 32 of the *Alabama Rules of Criminal Procedure*. (Doc. # 6-11). Evans contended newly discovered evidence showed he was actually innocent. (*Id.*). The new evidence was the affidavit of Danny Weaver, averring he and Jefferson committed the 2008 home invasion and that Evans did not participate. (*Id.*). On February 5, 2021, the sentencing court dismissed the Rule 32 petition as time-barred. (Doc. # 6-16). Evans did not appeal. (Doc. # 1 at 6).

Another four-plus years passed before Evans filed the instant habeas petition, on May 23, 2025. In his petition, Evans asserts newly discovered evidence demonstrates his factual innocence and challenging the sufficiency of the evidence presented at trial. (Doc. # 1 at 5). In response to the magistrate judge's order to show cause, Respondent filed an Answer asserting the petition should be dismissed without an evidentiary hearing. (Docs. # 4, 6). After entry of an order pursuant to *McBride v. Sharpe*, 25 F.3d 962 (11th Cir. 1994), Evans replied. (Docs. # 7, 8).

## II.    DISCUSSION

For the reasons explained below, Respondent is correct that the petition is untimely, unexhausted, and procedurally defaulted.[3]  These conclusions are addressed below, in turn.

### A.    The Claims are Time-Barred

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year limitation period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). A petitioner may be excused from this one-year limitation under three circumstances. First, a petition may be statutorily tolled for "[t]he time during which a properly filed application for State post-conviction or other

---

[3] Respondent also contends Evans asserts what amounts to a non-cognizable, free-standing actual innocence claim. Because this action is due to be dismissed on the procedural defenses, thorough discussion of this argument is unnecessary. It bears noting Evans explicitly alleges actual innocence as a gateway around the procedural requirements imposed by the Antiterrorism and Effective Death Penalty Act of 1996. That assertion is addressed below. (Docs. # 1 at 16, 8 at 22-3).

collateral review . . . is pending." *Id*. § 2244(d)(2). Second, a petition may be "subject to equitable tolling in appropriate cases." *Holland v. Fla.*, 560 U.S. 631, 645 (2010). Third, if a petitioner proves actual innocence he may avoid the one-year statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Here, Evans acknowledges AEDPA's statute of limitations has expired, but he contends Danny Weaver's affidavit establishes his actual innocence, and the declaration excuses his otherwise untimely federal habeas claims. (Docs. # 1 at 13, 8 at 2-3).

The Supreme Court has held that actual innocence, if proven, serves as a gateway through which a petitioner may proceed with claims that otherwise would be denied as untimely or procedurally barred. *See McQuiggin*, 569 U.S. at 386. But viable actual innocence gateway claims are rare. "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (alteration adopted). This demanding standard "permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quotation marks omitted). "To meet the threshold showing of innocence in order to justify a review of the merits of the constitutional claims, the new evidence must raise sufficient doubt about the petitioner's guilt to undermine confidence in the result of the trial. Actual innocence means factual innocence, not mere legal insufficiency." *Ray v. Mitchem*, 272 F. App'x 807, 810 (11th Cir. 2008) (quotation marks omitted). As the Supreme Court has observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup*, 513 U.S. at 324 (citation omitted).

Here, Evans contends Weaver's 2016 affidavit proves he did not participate in the home invasion underlying his convictions. (Docs. # 1 at 5, 2 at 8-9). But, while Weaver's affidavit contradicts unfavorable evidence presented at trial, it does not refute it. The jury heard testimony from a former employer that Evans had worked in the victims' home and knew they were wealthy. This evidence dovetailed with Jefferson's testimony that Evans said they could get money from a man for whom he had worked. Robyn Jones testified that, on the night of the burglary, Evans had a long gun with black tape on the stock, corroborating Jefferson's testimony about the rifle. Finally, an expert testified that, with a high degree of confidence, Evans was the source of DNA found on a mask worn by one of the perpetrators.[4]

In light of the foregoing, Evans has not established that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt" if Weaver's testimony had been presented at trial. *Schlup*, 513 U.S. at 329. A rational juror easily could have discounted Weaver's testimony in light of the other evidence presented. Indeed, the jury clearly rejected Evans's own testimony that he was not involved in the home invasion. Because Evans has not presented a viable gateway claim of actual innocence, his petition is due to be denied and dismissed as untimely.

## B.    The Claims are Unexhausted and Procedurally Defaulted

Even if the instant petition were timely – and, to be clear, it is not – the claims would fail for alternative reasons: they are unexhausted and procedurally defaulted. A petitioner must exhaust all available state-court remedies before filing a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Georgalis v. Dixon*, 776 F.2d 261, 262 (11th Cir. 1985). "Exhaustion requires that 'state prisoners . . . give the state courts one

---

[4] Although Evans does not explain how he procured Weaver's affidavit, it appears the two men may have been incarcerated together at W.E. Donaldson Correctional Facility. Specifically, the Rule 32 petition suggested Weaver did not know Evans before his time at Donaldson. (Doc. # 6-11 at 4). If Evans and Weaver served time together, that undermines the reliability of Weaver's affidavit. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531 (11th Cir. 2009); *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (affidavits claiming another individual committed the crime for which the prisoner was convicted should be "treated with a fair degree of skepticism.") (O'Connor, J., concurring).

full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (quoting *Boerckel*, 526 U.S. at 845).

Exhausting a challenge to an Alabama state conviction includes seeking review from the Supreme Court of Alabama, either on direct appeal or via post-conviction petition. *See Boerckel*, 526 U.S. at 845; *Mauk v. Lanier*, 484 F.3d 1352, 1357 (11th Cir. 2007); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003); *Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001); ALA. R. APP. P. 39, 40. In the course of exhausting state remedies, a federal habeas petitioner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276, (1971). The Eleventh Circuit has explained the point this way:

> While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (quotation marks and citations omitted).

Here, Evans filed his Rule 32 petition in 2017, challenging his convictions based on Weaver's 2016 affidavit. (Doc. # 6-11). The sentencing court dismissed the Rule 32 petition as untimely, and Evans did not appeal. (Docs. # 1 at 6, 6-16). Accordingly, Evans did not exhaust any claims in the course of his Rule 32 proceedings. Evans attempts to hitch the claims in the instant petition to the claims he asserted on direct appeal. The problem with that effort is that on direct appeal Evans argued there was insufficient evidence of his participation in the crime. He now characterizes Weaver's affidavit as a continuation of his arguments regarding the sufficiency of the evidence. (Docs. # 1 at 5, 8 at 2). That argument is without merit.

Weaver's 2016 affidavit did not even exist when his direct appeal concluded in 2011. Obviously, Evans could not have provided a "specific factual foundation" of evidence based on a

declaration that did not come into existence for another five years—after the conclusion of his direct appeal. *McNair*, 416 F.3d at 1302. Indeed, the Alabama state courts' first opportunity to consider Weaver's affidavit did not arise until Evans filed the Rule 32 petition in 2017. The sentencing court dismissed the Rule 32 petition as untimely. Evans never appealed. Accordingly, the Alabama state courts did not have a "meaningful opportunity" to address the instant federal claims. They are unexhausted. *See McNair*, 416 F.3d at 1302-03.

Furthermore, Evans cannot exhaust state court remedies because any subsequent Rule 32 petition he filed would be barred as successive and untimely. *See* ALA. R. CRIM. P. 32.2(b), (c). Accordingly, Evans's unexhausted claims are also procedurally defaulted, which further bars federal review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (where method to exhaust federal claims is foreclosed, any unexhausted claims become procedurally defaulted); *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009) ("Because it is apparent that the Florida courts would now refuse to hear this claim, it is procedurally defaulted."); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

Federal habeas relief is unavailable for procedurally defaulted claims unless the petitioner shows "cause and prejudice" or a "fundamental miscarriage of justice." *See Smith*, 256 F.3d at 1138. Evans alleges no facts that suggest cause and prejudice or otherwise excuse his procedural default. (Docs. # 1, 2, 8). And, while proof of actual innocence qualifies as a fundamental miscarriage of justice, as explained above, Evans has not shown actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40, 348 (1992). Accordingly, Evans's unexhausted claims are also due to be dismissed as procedurally defaulted.

## III.    CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus is due to be denied and this action dismissed with prejudice as untimely, unexhausted, and procedurally defaulted. In accordance with Rule 11 of the *Rules Governing Section 2254 Cases*, a certificate of appealability

8

is due to be denied. This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks omitted). Based on the foregoing discussion, the court concludes Evans has failed to make the requisite showing.

A separate order will be entered.

**DONE** and **ORDERED** this March 10, 2026.

**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE